UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
YESHIVA IMREI CHAIM VIZNITZ OF  :
BORO PARK, INC.,                :
                                :
    Plaintiff,                 :
                                :    10 CV 05986 (HB)
       - against -            :
                                :    OPINION &
THE CITY OF NEW YORK, THE NEW YORK :  ORDER
CITY DEPARTMENT OF BUILDINGS, THE :
NEW YORK CITY BOARD OF STANDARDS :
AND APPEALS, THE FIRE DEPARTMENT :
OF NEW YORK, PATRICIA J. LANCASTER, :
in her official capacity as former DOB :
Commissioner, MEENAKSHI SRINIVASA, in :
her official capacity as BSA Chairperson, :
ROBERT LIMANDRI, in his official capacity as :
DOB Commissioner, and JOHN and JANE :
DOES 1-10,                      :
                                :
    Defendants.                :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

       Yeshiva Imrei Chaim Viznitz of Boro Park, Inc. ("Plaintiff"), a duly licensed religious corporation operating a religious school and synagogue, alleges that it is being disparately treated by defendants the City of New York, the New York City Department of Buildings (the "DOB"), the New York City Board of Standards and Appeals (the "BSA"), the New York City Fire Department, Patricia J. Lancaster, in her official capacity as former DOB Commissioner, Meenakshi Srinivasan, in her official capacity as BSA Chairperson, and Robert LiMandri, in his official capacity as DOB Commissioner (collectively, "Defendants" or the "City").  Plaintiff brings seven causes of action against Defendants alleging violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. §2000cc(b)(1) and §2000cc(a), the United States Constitution, the Constitution of the State of New York and the Civil Rights Law of the State of New York.  Defendants now move for summary judgment.  For the reasons that follow, Defendants' motion is GRANTED.

## I. Factual and Procedural Background

Plaintiff owns and operates a three-story building with a cellar at 1854 53rd Street in Brooklyn, New York.[1] The building is located in an R5 residential zoning district, designed to accommodate all types of residential buildings. The building consists of a yeshiva, which provides religious instruction to over 600 students, and a synagogue. A catering establishment is located in the cellar of the building, and this same cellar space is used for the school's cafeteria and assembly hall.

In May 1999, the DOB issued a final certificate of occupancy ("C of O") to Plaintiff's building. In addition to providing various authorizations as a school and synagogue, the C of O authorized the cellar of the building to be used as a Use Group 9 ("UG9") catering establishment. In 2002, the DOB reexamined Plaintiff's previously approved use and concluded that the building could not include its catering establishment in a district zoned residential. On February 16, 2005 the DOB commenced an action before the BSA to revoke the UG9 designation.

On or about September 19, 2005, Plaintiff filed an application with the BSA for a variance to permit the UG9 catering use that was not permitted in an R5 zoning district, as well as a request to the DOB for approval of the catering establishment as a proper accessory use.[2] The DOB denied Plaintiff's accessory use application and Plaintiff appealed to the BSA. On January 9, 2007, the BSA denied both the appeal regarding accessory use, *see* BSA Resolution of Accessory Use Appeal, Ex. C to 05/16/2011 Decl. of Ave Maria Brennan, Counsel to Defs., in Supp. of Mot. for Summ. J. ("Brennan Decl."), and the variance application, *see* BSA Resolution of Variance Application, Ex. E to Brennan Decl., and granted the DOB's application to revoke Plaintiff's C of O, *see* BSA Resolution of DOB Application, Ex. G to Brennan Decl.[3] The BSA also granted the DOB's motion to continue its application for revocation/modification of the C of

---

[1] Unless otherwise specified, facts in this section are taken from findings by the court in *Yeshiva Imrei Chaim Viznitz of Boro Park, Inc. v. The City of New York, et al.*, Index Nos. 5347/07, 18565/07, 4841/07 (N.Y. Sup. Ct. 2009); Ex. I to Brennan Decl.

[2] New York City Zoning Resolution § 12-10 defines an "accessory use" as (a) a use conducted on the same zoning lot as the principal use to which it is related, except that, where specifically provided in the applicable district regulations or elsewhere in this Resolution, accessory docks, off-street parking or off-street loading need not be located on the same zoning lot; and (b) a use which is clearly incidental to, and customarily found in connection with, such principal use; and (c) is either in the same ownership as such principal use, or is operated and maintained on the same zoning lot substantially for the benefit or convenience of the owners, occupants, employees, customers, or visitors of the principal use. New York, N.Y., Zoning Resolution § 12-10 (2011).

[3] The BSA explained that "(1) [the] determination does not render the School or Synagogue illegal in any respect; (2) the cellar may still be used as a cafeteria in conjunction with the school; [and] (3) events that are accessory to the School and/or Synagogue may be held in the cellar pursuant to the approval of [the] DOB and in accordance with this decision." BSA Resolution of Accessory Use Appeal, Ex. C to Brennan Decl. at 11.

O on April 24, 2007. *Id.* at 1. The DOB subsequently amended Plaintiff's C of O by removing the UG9 designation for Plaintiff's catering establishment. *Id.* at 7.

In 2007, Plaintiff filed an action in the New York State Supreme Court, Kings County, challenging the BSA's determinations (hereinafter "the Article 78 proceeding").[4] On May 8, 2009, that court (hereinafter "the Article 78 Court") denied Plaintiff's challenges and held that the "resolutions of the BSA [had] a rational basis, and [were] neither arbitrary nor capricious." *Yeshiva Imrei Chaim Viznitz of Boro Park, Inc. v. The City of New York, et al.*, Index Nos. 5347/07, 18565/07, 4841/07, at 83 (N.Y. Sup. Ct. 2009); Ex. I to Brennan Decl.

Plaintiff filed a notice of appeal on June 22, 2009. *See* Notice of Appeal, Ex. J to Brennan Decl. The New York Supreme Court, Appellate Division dismissed the appeal on February 19, 2010 because Plaintiff failed to perfect its appeal within the time permitted.[5] *See Yeshiva Imrei Chaim Viznitz of Boro Park, Inc. v. City of New York, et al.*, No. 2009-06824 (N.Y. App. Div. Feb. 19, 2010); Dismissal for Failure to Timely Perfect, Ex. K to Brennan Decl.

Plaintiff filed its complaint before this Court on August 9, 2010, and brings seven causes of action: (1) Defendants are treating Plaintiff on less than equal terms than comparable non-religious institutions in violation of the RLUIPA 42 U.S.C. §2000cc(b)(1) ("Count I"); (2) Defendants' refusal to recognize Plaintiff's use of the catering establishment as a proper accessory use is a substantial impediment to Plaintiff's religious exercise in violation of RLUIPA 42 U.S.C. §2000cc(a) ("Count II"); (3) Defendants have intentionally treated Plaintiff differently from other similarly situated nonreligious and religious institutions in violation of the Equal Protection guarantees of the 14th Amendment of the U.S. Constitution ("Count III"); (4) Defendants' "unequal, adverse treatment" of Plaintiff deprives Plaintiff of the right to free exercise of religion guaranteed by the First and Fourteenth Amendments of the U.S. Constitution ("Count IV"); (5) Defendants, under color of law, have violated Plaintiff's constitutional rights under 42 U.S.C. § 1983 ("Count V"); (6) Defendants have violated the Constitution of the State of New York by depriving Plaintiff of the right to free exercise of religion and equal protection

---

[4] Plaintiff challenged all three determinations made by the BSA: (1) deciding that the catering establishment operating in the cellar of Plaintiff's premises is not an accessory use; (2) denying Plaintiff's request for a variance to permit the UG9 catering establishment to operate in a residential district; and (3) granting the DOB's application to modify Plaintiff's C of O and to remove the UG9 catering use. *See Yeshiva Imrei Chaim Viznitz*, Index Nos. 5347/07, 18565/07, 4841/07, at 1-2.

[5] The New York Codes, Rules, and Regulations dictate that an appellant has six months from the date of the notice of appeal to perfect the appeal or proceeding. 22 NYCRR 670.8(e).

3

("Count VI"); and (7) Defendants have deprived Plaintiff of its rights secured by the Civil Rights Law of the State of New York § 40-c ("Count VII"). Compl. ¶¶ 50-94.

Defendants moved for a judgment on the pleadings pursuant to Rule 12(c) on the grounds that: (1) the federal claims in the complaint fail to state a claim upon which relief can be granted because they are barred by the doctrines of collateral estoppel and res judicata; (2) the inability to operate a catering establishment does not constitute a substantial burden under RLUIPA; (3) Count V fails to state an independent claim upon which relief can be granted; and (4) this Court should decline to exercise supplemental jurisdiction over the state law claims. *See* 12/22/2010 Defs.' Reply Mem. in Supp. of Mot. for J. on Pleadings at 1-2.

Before the Court resolved the motion for judgment on the pleadings, Defendants moved for summary judgment on the grounds that: (1) the claims raised by Plaintiff are barred by the doctrines of collateral estoppel and res judicata; (2) the inability of the school and synagogue to operate a catering establishment does not constitute a substantial burden under RLUIPA; (3) Plaintiff has not met its burden to identify other religious non-profit organizations that are similarly situated and had experienced different treatment as required under RLUIPA; (4) Plaintiff's equal protection claim fails to demonstrate that Plaintiff was similarly situated to other religious non-profit organizations that operate catering establishments; (5) Plaintiff's First Amendment rights are not violated by the application of general accessory use regulations; and (6) that this Court should decline to exercise supplemental jurisdiction over the state claims. *See* 05/16/2011 Defs.' Mem. in Supp. of Mot. for Summ. J. at 2-3. This Opinion addresses the Defendants' motion for summary judgment, which subsumed the motion for judgment on the pleadings.

## II. Discussion

### A. Legal Standard

A motion for summary judgment must be granted if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must resolve all ambiguities and draw all inferences against the moving party. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005). "If a party fails to properly support an assertion of fact . . . the

4

court may . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Additionally, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Collateral Estoppel

This Court applies New York law to determine the preclusive effect of a New York State judgment. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002); *see also Xu v. City of New York*, No. 08-CV-11339, 2010 WL 3060815 (S.D.N.Y. Aug. 3, 2010) (applying New York's preclusion law to determine whether an Article 78 proceeding bars litigation of the remaining claims in federal court). Under New York law, collateral estoppel is a bar when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted). Collateral estoppel is a "flexible doctrine and whether to apply it [in] a particular case depends on 'general notions of fairness involving a practical inquiry into the realities of the litigation.'" *Id.* at 65-66 (quoting *Jeffreys v. Griffin*, 801 N.E.2d 404, 409 (N.Y. 2003)). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citation omitted).

#### 1. Issues in the Article 78 proceeding and presently before the Court

This Court must first decide to what extent if at all the issues resolved in the Article 78 proceeding are identical to and decisive of the present claims. The Article 78 Court held that the BSA had a rational basis when it determined that the catering establishment was not an accessory use, denied the application for a variance, and granted the DOB's application to remove the UG9 designation from the C of O. *See Yeshiva Imrei Chaim Viznitz*, Index Nos. 5347/07, 18565/07, 4841/07, at 32, 57, 82. The Article 78 Court also held that the zoning law did not impose a substantial burden on Plaintiff. *Id.* at 53, 66. For the reasons that follow, these holdings are dispositive of the issues in Counts I through IV.

*a.     Counts I and III*

Defendants argue that Plaintiff is collaterally estopped from bringing these counts because each is based on the premise that the catering establishment in Plaintiff's cellar is a legal accessory use, which the Article 78 Court decided against Plaintiff. Plaintiff argues that the Article 78 Court merely decided whether to grant or deny Plaintiff's appeal of the DOB's determination that the catering establishment was not operating as an accessory use at the time of that determination, and that such a determination is not decisive here. Notwithstanding Plaintiff's attempts to mischaracterize what the Article 78 Court held, Defendants have met their burden and the issues decided there are determinative here.

Where an issue is raised and decided by an Article 78 Court in its analysis of whether the government had a rational basis for its actions, a subsequent proceeding to decide the identical issue cannot proceed. *Vargas v. City of New York, et al.*, 377 F.3d 200, 207-08 (2d Cir. 2004). In *Latino Officers Ass'n v. City of New York*, the district court held that where a plaintiff did not argue in state court that his termination was discriminatory, the state court's "finding that the decision to terminate was supported by substantial evidence—essentially a finding that it was rational—does not lead inexorably to the conclusion that race was not a motivating factor in the NYPD's decision to terminate him." 253 F. Supp. 2d 771, 785 (S.D.N.Y. 2003). However, where a second plaintiff in the same case contended that his termination was retaliatory and discriminatory, the state court's conclusion that the penalty of dismissal did not shock the conscience "necessarily implied rejection of his claim that his termination was discriminatory and retaliatory. After all, had the termination been discriminatory or retaliatory, the court could not have found it to have been rational." *Id.* at 787.

Here, in reaching its conclusion that the BSA had a rational basis, the Article 78 Court explicitly decided that Plaintiff's catering establishment is not a valid accessory use to the yeshiva and synagogue. This issue is dispositive of the issues in Counts I and III. Count I requires that Plaintiff prove that the City has "impose[d] or implement[ed] a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1) ("Equal Terms"). Count III requires that Plaintiff prove that the City denied it equal protection of the laws. U.S. Const. amend. XIV. In both counts, Plaintiff alleges that Defendants have discriminated against it because they freely allow non-religious institutions operating valid accessory uses to engage in the practice of renting out their premises while requiring Plaintiff to obtain prior approval and

6

submit to intrusive inspections before operating its catering establishment. Compl. ¶¶ 49-52, 69. Given that the Article 78 Court held that Plaintiff is not operating a valid accessory use, Plaintiff's argument that it is similarly situated to other institutions operating valid accessory uses lacks merit, and Plaintiff is essentially asking this Court to overturn the Article 78 Court's decision.

Plaintiff also argues that since the decision by the Article 78 Court, its catering establishment has been operated as a legal accessory use; unfortunately for Plaintiff it has failed to provide sufficient evidence to raise a triable issue of fact to support its position. Plaintiff offers as evidence only its assertion that it has moved the "chupa" from the sidewalk in front of the catering establishment to the synagogue or above the catering establishment. I find this purported relocation of the "chupa" insufficient to constitute a new legal question as to whether Plaintiff is operating a legal accessory use.

Additionally, Plaintiff argues that the Defendants have engaged in two sets of discriminatory acts that do not rely on the presumption that Plaintiff is operating a legal accessory use and which have taken place after the Article 78 Court's decision. First, Plaintiff argues that the Defendants have issued several violations, conducted dozens of inspections, and threatened to institute padlock proceedings against Plaintiff but have not conducted similar investigations of other entities allegedly engaged in illegal accessory use catering operations. Plaintiff points out that Virginia Sullivan, the Director of the Borough Enforcement Unit of the DOB, is not aware of any other similar investigations; however, the fact is that Plaintiff has failed to provide any evidence that another entity known to the DOB is operating an illegal accessory use or that Defendants have acted arbitrarily with respect to the enforcement of law.[6]

---

[6] Plaintiff relies on the institutions addressed by the court in *Third Church of Christ v. City of New York* as evidence of Defendants' discrimination. 617 F. Supp. 2d 201 (S.D.N.Y. 2008); *see Third Church Submissions*, Ex. J to 05/30/2011 Decl. of Stuart Klein, Counsel to Pl., in Opp'n to Defs.' Mot. for Summ. J. ("Klein Decl."). The *Third Church* court held that the City violated the Equal Terms provision of RLUIPA because two of the institutions, the Beekman and Regency Hotels, were "also in violation of the Zoning Resolution, [but] were given only a 'Notice of Violation[,]'" yet the plaintiff's accessory use designation was revoked entirely. *Third Church of Christ*, 617 F. Supp. 2d at 213. Here, to the extent that Plaintiff argues that these hotels are similarly situated because they operate valid accessory uses, Plaintiff's argument must fail because as noted the Article 78 Court held that Plaintiff is not operating a valid accessory use. To the extent that Plaintiff argues that the above mentioned hotels are similarly situated because they operate illegal accessory uses but are being treated differently by Defendants, Plaintiff fails to provide evidence to raise a triable question of fact. Plaintiff simply asserts that "[since] these establishments are well-known . . . it is fair to infer that the [DOB] considers their activities lawful accessory uses, . . . [and the BSA] has failed to ask [the] DOB why, if these uses are illegal, these locations are permitted to openly operate, without consequence." *See* 10/17/2006 Letter to BSA, Ex. N to 05/30/2011 Pl.'s Mem. in Opp'n to Mot. for J. on the Pleadings at 1-2. These conclusory statements are insufficient to withstand a motion for summary judgment because

Further, Plaintiff argues that Defendants have required it to obtain prior DOB approval for each catered event and that other similarly situated entities have not been subject to this requirement. Plaintiff's argument that Defendants are discriminating against Plaintiff by requiring it to obtain approval to host a catered event because "there is in fact no requirement for an institution to obtain prior approval from [the] DOB or any other City agency in order to operate accessory use catering" is misleading. *See* 05/30/2011 Pl.'s Mem. in Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n Mem.") at 22. Although an entity operating a legal accessory use need not seek prior approval, there has already been a finding that Plaintiff has not been operating a legal accessory use. Plaintiff again asserts, without providing any evidence in support, that this requirement has not been imposed on any other institution.[7]

### b. Count II

Defendants have also met their burden to show that the Article 78 Court decision is decisive of the issue in Count II. Count II requires that Plaintiff prove that the City has "impose[d] or implement[ed] a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the [City] demonstrates that imposition of the burden . . . is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a) ("Substantial Burden"). In issuing its decision, the Article 78 Court discussed at length the Plaintiff's argument that a prohibition on operating its catering establishment would constitute a substantial burden on Plaintiff's religious exercise in violation of RLUIPA 42 U.S.C. §2000cc(a). *Yeshiva Imrei Chaim Viznitz*, Index Nos. 5347/07, 18565/07, 4841/07, at 53, 66. Whether or not this Court agrees with the Article 78 Court's analysis, it is obliged to recognize that the issue is indeed identical to the issue before this Court.

### c. Count IV

Finally, Defendants have met their burden to show that the Article 78 Court decision is decisive of the issue in Count IV. Count IV requires that Plaintiff prove that the City has prohibited the free exercise of religion. U.S. Const. amend. I. Plaintiff alleges that Defendants

---

they fail to spell out any facts as required under Rule 56(e). *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 898-899 (1990).

[7] This Court does not interpret Defendants' statement that they are unable to respond to a discovery request without a specific address to mean that other institutions have not been required to obtain approval to operate a catering event, and again, Plaintiff has failed to produce any evidence to support its assertion.

are posing a substantial burden on religious exercise by denying Plaintiff the ability to generate revenue to support its religious mission and preventing patrons from fulfilling the religious requirement of having a meal at a Jewish marriage ceremony. Compl. ¶¶ 58, 79. As discussed above, the Article 78 Court decided that Defendants' actions do not constitute a substantial burden on Plaintiff. Plaintiff also alleges that Defendants' implementation of the City's land use laws is not neutral and generally applicable to all, but instead discriminates unfairly against the Plaintiff. Compl. ¶ 78. As discussed above, Plaintiff has failed to produce sufficient evidence to show that this Court is presented with a new issue. Therefore, the determinations of the Article 78 Court are decisive of the issues in Count IV.

### 2. Full and Fair Opportunity to Litigate

Given that the issues decided by the Article 78 Court are decisive of those in the present action, this Court must next decide whether Plaintiff was afforded a full and fair opportunity to litigate in the Article 78 proceeding. The factors courts consider when determining whether a litigant had a full and fair opportunity to litigate include "the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." *Ryan v. New York Telephone Co.*, 467 N.E.2d 487, 491 (N.Y. 1984).

Plaintiff offers three reasons why it was not afforded a full and fair opportunity to litigate the issues decided by the Article 78 Court, none of which are sufficient to meet its burden. First, Plaintiff argues that the Article 78 Court's decision that the BSA had a rational basis to deny Plaintiff's application appealing the DOB's denial of Plaintiff's variance application and that the UG9 catering establishment is not a valid accessory use to the synagogue and school does not necessarily decide whether Defendants have discriminated against Plaintiff in general. However, as explained above, Plaintiff's claims of discrimination arise out of its assertion that it is operating a valid accessory use, which was actually and necessarily decided by the Article 78 Court. Plaintiff has failed to show how the nature of that forum or importance of the claims asserted therein weigh against applying collateral estoppel here, where the Article 78 Court operated within its jurisdiction and the Plaintiff had a strong incentive to litigate in that proceeding.

Second, Plaintiff argues that in its petition to the Article 78 Court it preserved its right to raise a RLUIPA claim in federal court. *See* Pl.'s Opp'n Mem. at 8. Plaintiff cites no law and I

9

have found none to support its position that stating an intent to raise a claim in a subsequent proceeding in another court deprives a litigant of a full and fair opportunity to adjudicate its claim where the litigant argued the issue and the court decided it on the merits.  This Court is loath to create a rule that would allow at the whim of a party litigants to so easily escape the doctrine of collateral estoppel and risk turning federal courts into a forum for appellate review of state decisions.

Third, Plaintiff argues it was deprived of a full and fair opportunity to litigate the accessory use issue because of undiscoverable or wrongfully withheld evidence.  Plaintiff argues that the Article 78 Court did not consider certain documents produced by the *Third Church* litigation, which took place after the BSA proceedings, and therefore did not comprise the record before the Article 78 Court.  However, Plaintiff had access to these documents during the Article 78 proceeding and alleges that Judge Schmidt even questioned the City about these documents.  Plaintiff also asserts that on two occasions it had requested from the DOB a list of applications and/or reconsiderations submitted, requested, approved, and/or denied regarding accessory uses over a three year period and that the DOB denied the requests.  Plaintiff argues that such information would have revealed proof that Plaintiff had been operating a valid, accessory use.  However, the Article 78 Court addressed Defendants' failure to produce the requested documents and decided that Defendants substantially complied with Plaintiff's requests.[8]

Plaintiff had the opportunity to raise these evidentiary issues with the Appellate Division but failed to perfect its appeal.  This United States District Court does not serve as an alternative forum to review state court decisions when litigants fail to perfect their appeal.  *See e.g. Schwartzberg v. Califano*, 480 F. Supp. 569, 574 (S.D.N.Y. 1979) ("[P]laintiffs cannot . . . now argue that they were not afforded procedural due process prior to the terminations.  Indeed, this finding became final when plaintiffs failed to perfect their appeal of my prior Opinion and they are hereby estopped from relitigating that issue.").  Given that the Article 78 Court considered these issues, and after review I find that this evidence does not appear to be dispositive, Plaintiff was not denied its full and fair opportunity to litigate.

---

[8] On December 11, 2007, Judge Schmidt ordered the DOB to search for the documents Plaintiff requested, and if no documents were found, to identify how the search was conducted.  The DOB responded with an affirmation which identified how the DOB kept its records, but Plaintiff alleges that the DOB never completed a search for the records.  Plaintiff moved for an order of contempt, and while the motion was pending, Judge Schmidt recused himself.  The case was transferred to Judge Martin, who ultimately held that "[o]n the basis of the record before it . . . [t]he court finds [Defendants] substantially complied with discovery demands . . . .  The court, accordingly, denies petitioner's motion to hold respondents in contempt of the court's orders."  *See Yeshiva Imrei Chaim Viznitz*, Index Nos. 5347/07, 18565/07, 4841/07, at 31.

Moreover, under the *Rooker-Feldman* doctrine, federal district courts lack subject matter jurisdiction over suits that seek to review final determinations by state courts or that seek to resolve issues that are "inextricably intertwined" with earlier state court determinations. *See Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust,* 263 U.S. 413 (1923); *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004). Thus, if a suit or claim would be barred in state court by collateral estoppel, the *Rooker-Feldman* doctrine prevents the federal court from asserting subject matter jurisdiction. *Vargas*, 377 F.3d at 205.

Having decided that all relevant issues in Counts I through IV are barred by collateral estoppel, this Court need not address either the applicability of res judicata or the remainder of the parties' arguments.

### C. Count V: Violation of 42 U.S.C. § 1983

Section 1983 states that a "person who, under color of [law], subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. In order to bring an action pursuant to § 1983, a plaintiff must indicate which of its federally protected rights were violated and indicate the remedies it seeks under the statute. *See, e.g.*, *Perez v. Westchester County Department of Corrections*, 587 F.3d 143, 145 (2d Cir. 2009). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F. 3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). In Counts III and IV, Plaintiff pleads that it seeks relief under § 1983. Compl. ¶¶ 72, 80. Plaintiff's Count V does not raise any additional Constitutional claims nor seek additional remedies. Therefore, Count V is dismissed as duplicative of Counts III and IV, which are barred by collateral estoppel.

### D. State Law Claims

District Courts may decline to exercise supplemental jurisdiction over a state law claim if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c) (2006). Having dismissed all claims over which this Court would have original jurisdiction, I decline to exercise supplemental jurisdiction over Plaintiff's state law claims, Count VI and Count VII.

## III. Conclusion

The Defendants' motion for summary judgment is GRANTED and the Complaint is dismissed. The Clerk of the Court is instructed to close all open motions and remove this case from my docket.

SO ORDERED.

July 27, 2011
New York, New York

*[signature]*

Hon. Harold Baer, Jr.
U.S.D.J.